IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHASIN RENTERIA, | **8:20CV166** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| NEBRASKA DEPARTMENT OF CORRECTIONS, | |
| Defendant. | |

Plaintiff, Chasin Renteria ("Renteria"), is a state prisoner who currently is incarcerated at the Omaha Correctional Center. Renteria filed his Complaint (Filing No. 1) on April 30, 2020, and was granted leave to proceed in forma pauperis on May 4, 2020. (Filing No. 6.) Now that Renteria has paid the required initial partial filing fee, the court conducts an initial review of his Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Renteria alleges he has a "handicap" and claims his "rights were violated by several employees who work for the Nebraska Department of Corrections" during a 2-week period while he was temporarily transferred from the Omaha Correctional Center to the Nebraska State Penitentiary. (Filing No. 1, p. 4.) More specifically, Renteria claims his "civil rights under the ADA were violated" and alleges he "suffered physical and psychological damage as a result." (Filing No. 1, p. 5.) As factual support for this claim, Renteria alleges:

> I was in an 8-man cell where an incident occurred and a man was injured. As a result, the NDC conducted an investigation into the incident and I was taken to the Nebraska State Pen while they conducted said investigation. I was there from 03-14-20 to 03-27-20. I was forced to use stairs, with no chair lift, to get to and from my cell.

> My cell was not handicap accessible and there was no way to get staff attention in case of an emergency. I was forced to share a shower that was not ADA approved. There were no handrails, or seat, and I had no ramp to enter the shower. The staff forced me to use my walker in the shower, which is not intended for such use. As a result, I fell on two separate occasions and hurt my head and shoulder. I was refused medical attention. The State Pen has a skilled nursing facility that is ADA compliant, yet they put me in an administrative segregation unit that is in now way ADA compliant. I was never found to be at fault as a result of the department's investigation or involved in any way. I never should have been put where I was.

(Filing No. 1, pp. 4-5.) Renteria seeks to recover $1 million in damages from the Nebraska Department of Corrections ("NDC").[1] (Filing No. 1, p. 6.)

## II.  LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *28* U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[1] The agency's proper name is the "Department of Correctional Services." *See* Neb. Rev. Stat. § 83-171.

2

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (internal quotation marks and citations omitted).

## III.  DISCUSSION OF CLAIMS

Liberally construing Renteria's Complaint, he is asserting a discrimination claim against NDC under Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12131 *et seq.* Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

The Act defines "public entity" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1). This term includes state prisons. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998).

"The Eleventh Amendment, as understood by the Supreme Court, 'confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact,' and that the States thus may not be sued in federal court without their consent, unless Congress has validly abrogated the immunity." [2] *Quinnett v. Iowa*, 644 F.3d 630, 632 (8th Cir. 2011) (quoting *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 253 (2011)); *see Van Wyhe v. Reisch*, 581 F.3d 639, 653

_____

[2] Eleventh Amendment immunity extends to state agencies, which are considered an arm of the State. *See Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718, 720 (8th Cir. 2001). NDC is not alleged to have waived its immunity.

3

n. 4 (8th Cir. 2009) ("The Supreme Court has recognized two circumstances in which an individual may bring suit in federal court against a state. First, Congress may *abrogate* a state's sovereign immunity through legislation enacted pursuant to its Section 5 enforcement power of the Fourteenth Amendment, …. Second, a State may *waive* its sovereign immunity by consenting to suit.") (emphasis in original; internal quotations and citations omitted).

The Supreme Court held in *Georgia* that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment,[3] Title II validly abrogates state sovereign immunity." 546 U.S. at 159 (emphasis in original). This requires the court to determine, on a claim-by-claim basis, "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*

The starting point for this analysis is to determine whether a plaintiff has alleged sufficient facts to state a plausible ADA claim. In order to sufficiently plead that NDC violated Title II, Renteria must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the Nebraska State Penitentiary's services, programs, or activities, or was otherwise subjected to discrimination by the prison; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility

---

[3] The Fourteenth Amendment's Due Process Clause incorporates the Eighth Amendment's guarantee against cruel and unusual punishment. *See Georgia*, 546 U.S. at 157.

requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include such things as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Renteria alleges he is handicapped, but he has not set forth sufficient facts to show that he is a "qualified individual with a disability." *See Watson v. Kelloggs Co.*, No. 8:20CV126, 2020 WL 2732131, at *5 (D. Neb. May 26, 2020) ("Plaintiff's Complaint contains no facts describing the nature of his disability …. Without this basic information, no plausible claim for relief is stated."); *Carlentine v. Duggan*, No. 8:19CV251, 2020 WL 1820129, at *3 & n. 2 (D. Neb. Apr. 10, 2020) (ADA plaintiff failed to state a claim upon which relief may be granted because he failed to allege any facts describing "the nature of his disability [and] whether his disability limited his major life activities and, if so, how...."). However, the court will give Renteria leave to file an Amended Complaint, in which he must describe the nature of his alleged handicap and how it affects his major life activities.

Under the ADA, there are two means of discrimination: (1) disparate treatment and (2) the failure to make reasonable accommodations. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). Disparate treatment discrimination is based on "intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Id.* at 767.

The "deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and … other prison programs" may constitute a violation of Title II. *Georgia*, 546 U.S. at 157; *see Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). But in order to state a claim upon which relief may be granted, a plaintiff must allege that the defendant's failure

to accommodate his alleged disability has prevented him from participating in specific programs and activities at his correctional institution. *Brown v. Nebraska Dep't of Corr. Servs.*, No. 8:16CV217, 2016 WL 5173232, at *6 (D. Neb. Sept. 21, 2016); *see also Brown v. Houston*, No. 8:16CV217, 2018 WL 1309833, at *6 (D. Neb. Mar. 13, 2018) ("To establish a violation of Title II, [a plaintiff] 'must specify a benefit to which he was denied meaningful access based on his disability.'") (quoting *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 888 (8th Cir. 2009)).

Renteria's alleged complaints regarding the conditions of his confinement at NSP may be summarized as follows:
1. He was forced to use stairs to get to and from his cell;
2. He could not summon staff to his cell in case of an emergency;
3. The shower had no handrails or seat, and no entry ramp;
4. He was refused medical attention after twice falling in the shower; and
5. He was placed in an administrative segregation unit instead the prison's skilled nursing facility.

Even if Renteria's purported handicap might qualify as a "disability," the allegation that he could only get to and from his cell by using stairs does not, in and of itself, state a plausible ADA claim. Renteria does not allege that he was unable to traverse the stairs, nor does he identify any activity, service, or program he was unable to access because of the stairs. He also fails to specify any accommodation he requested (for example, relocation or elevator access). *See Brown v. Nebraska Dep't of Corr. Servs.*, 2016 WL 5173232, at *6 ("For example, Plaintiff *must specify* the inadequate accommodations that are the basis for his claim (such as failure to assign him to a permanent cell that is located on the main floor so as not to require him to climb stairs ….). Plaintiff *must also specifically identify* the activities, services, and programs in which he cannot participate due to the defendants' failure to accommodate Plaintiff's disability.") (emphasis in original); *see also Verrier v. Murphy*, No. 19-CV-1812, 2020 WL 1975168, at *7 (E.D. Wis. Apr. 24, 2020) (disabled prisoner stated plausible ADA claim by alleging that defendants' refusal to give him a low tier restriction prevented him from getting clean clothes, making phone calls, getting medicine, getting water, going to the bathroom, going to health

services for treatment, getting mail, eating, brushing teeth after meals, going outside, going to the library, getting haircuts, and laundry).

Renteria's next complains that his cell was not equipped with an emergency call system, but he has not alleged any facts to establish that he requested such an accommodation, or that there was even any need for it. "Correctional facilities are not liable for failing to provide accommodations which were not requested, nor are they required to provide preferential treatment to disabled inmates." *Brown v. Houston*, 2018 WL 1309833, at \*7 (citing *Randolph v. Rodgers,* 170 F.3d 850, 858 (8th Cir. 1999); *Lue v. Moore*, 43 F.3d 1203, 1206 (8th Cir. 1994)).

While Renteria alleges that he fell twice in the shower, there is no allegation that he requested an accommodation, or that his disability was so obvious that NDC was obligated to take some remedial action on its own. *See Kutrip v. City of St. Louis*, 329 F. App'x 683, 684-85 (8th Cir. 2009) (reversing grant of summary judgment in favor and city and remanding for further proceedings because fact issues remained on ADA claim regarding jail's denial of disabled-accessible shower and shower chair to obviously disabled inmate); *Allen v. Morris*, No. 4:93CV00398 BSMJWC, 2010 WL 1382112, at \*8 (E.D. Ark. Jan. 6, 2010) (permitting ADA claim to proceed against county where disabled jail inmate was denied accommodations for showering safely during a 12-day period), *report and recommendation adopted*, No. 493CV00398BSM-JWC, 2010 WL 1382116 (E.D. Ark. Apr. 2, 2010) "); *Smith v. Holder*, No. 1:17-CV-00117 SRC, 2020 WL 40237, at \*12 (E.D. Mo. Jan. 2, 2020) (granting summary judgment in favor of county where diabetic inmate produced no evidence that jailers were told he needed a handicap accessible shower and his disability was not obvious).

Renteria's allegation that he was refused medical attention fails to state a claim upon which relief can be granted because a lawsuit under the ADA cannot be based on medical treatment decisions. *Nahkahyen-Clearsand v. Dep't of Health & Human Servs.*, No. 8:17CV43, 2017 WL 1283494, at \*3 (D. Neb. Apr. 5, 2017) (citing *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005)); *see Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (affirming dismissal of ADA claims that were based on medical treatment decisions).

Finally, regarding Renteria's allegation about not being placed in the prison's skilled nursing facility, this appears to be just another aspect of the failure-to-accommodate claims which have already been discussed. No separate ADA violation is apparent on the facts alleged.

Because Renteria's Complaint fails to state a claim upon which relief may be granted under the ADA, there is no need at this time to examine the question of Eleventh Amendment immunity. *See Johnson v. Neiman*, 504 F. App'x 543, 545 (8th Cir. 2013) ("[W]e need not address whether the district court properly determined that MDOC was entitled to sovereign immunity on the ADA Title II claim. This is because there was insufficient evidence in the record to support the Title II claims."); *Lors v. Dean*, 746 F.3d 857, 864 (8th Cir. 2014) (recognizing sequential nature of *Georgia* analysis). Plaintiff is advised, however, that in order to state a plausible claim under the Eighth and Fourteenth Amendments, he must allege facts showing that NDC was deliberately indifferent to his health and safety, which involves more than mere negligence or inadvertence. *See Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).

## IV. CONCLUSION

Renteria's Complaint fails to state a claim upon which relief may be granted. However, the court will allow an Amended Complaint to be filed within 30 days, in which event the court will conduct another initial review. If an Amended Complaint is not filed within 30 days, this action will be dismissed.

Accordingly,

IT IS ORDERED:

1. On the court's own motion, Plaintiff shall have 30 days in which to file an Amended Complaint that states a claim upon which relief may be granted. Failure to file an Amended Complaint within 30 days will result in the court dismissing this case without further notice to Plaintiff.

8:20-cv-00166-RGK-PRSE   Doc # 7   Filed: 06/03/20   Page 9 of 9 - Page ID # 36

2. The clerk of the court is directed to set the following pro se case management deadline: "July 6, 2020: check for amended complaint."

Dated this 3rd day of June, 2020.

BY THE COURT:

Richard G. Kopf
Senior United States District Judge