IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHASIN RENTERIA,<br><br>Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | 8:20CV166<br><br>**MEMORANDUM AND ORDER** |

Plaintiff, Chasin Renteria ("Renteria"), is a state prisoner who currently is incarcerated at the Omaha Correctional Center ("OCC"). Renteria commenced this action on April 30, 2020, and was granted leave to proceed in forma pauperis on May 4, 2020. (Filing No. 6.) After Renteria paid the required initial partial filing fee, the court conducted an initial review of his Complaint (Filing No. 1) and determined it does not state a claim upon which relief may be granted. *See* Memorandum and Order entered on June 3, 2020 (Filing No. 7). However, the court on its own motion gave Renteria leave to amend within 30 days. Renteria filed an Amended Complaint on June 15, 2020 (Filing No. 8). The court now conducts an initial review of the Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review "as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. DISCUSSION OF CLAIMS

Liberally construing Renteria's Amended Complaint, he is asserting two types of discrimination claims against the Nebraska Department of Correctional Services ("NDCS") [1] under Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12131 *et seq.* Renteria first claims that NDCS failed to accommodate his alleged disability during a 2-week period, from March 14, 2020, to March 27, 2020, when he was confined at the Nebraska State Penitentiary ("NSP") pending an investigation into an incident that occurred a OCC. Renteria complains

---

[1] Although the Amended Complaint continues to identify Defendant as the Nebraska Department of Corrections, the agency's proper name is the Department of Correctional Services. *See* Neb. Rev. Stat. § 83-171.

2

he was placed in a cell in the segregation unit which was accessible only by stairs and did not have a handicap-accessible toilet or shower. Renteria alleges he was forced to crawl up the stairs while handcuffed and shackled, and that he was injured after twice falling in the shower. Secondly, Renteria claims he is not being allowed to play softball with other inmates at OCC because of his disability. The court finds Renteria has alleged sufficient facts in his Amended Complaint to permit these ADA claims to go forward at this time.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

The Act defines "public entity" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1). This term includes state prisons. *United States v. Georgia*, 546 U.S. 151, 154 (2006).[2]

In order to sufficiently plead that NDCS violated Title II, Renteria must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of NDCS's services, programs, or activities, or was otherwise subjected to discrimination; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or

---

[2] As discussed in the court's previous Memorandum and Order (Filing No. 7), there is a potential Eleventh Amendment immunity issue to be decided under the Supreme Court's holding in *Georgia*. The court will not repeat that discussion here.

the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

Renteria alleges he was involved in an automobile accident in 2013 in which he broke his T11 and T12 vertebrae and suffered a pinched spinal cord, as a result of which he has only partial use of his legs. Renteria alleges this condition leaves him unable to stand up straight or to walk without the use of a walker; unable to use stairs safely; unable to use a shower safely unless it is equipped with a handicap accessible entry, handrails, and shower chair; and unable to use a toilet without the aid of a handrail to sit and stand. (Filing No. 8, p. 1.) These allegations are sufficient to show that Renteria has a disability within the meaning of the ADA.

Under the ADA, there are two means of discrimination: (1) disparate treatment and (2) the failure to make reasonable accommodations. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). Disparate treatment discrimination is based on "intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Id.* at 767.

The "deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and … other prison programs" may constitute a violation of Title II. *Georgia*, 546 U.S. at 157; *see also Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

With respect to his 2-week confinement at NSP, Renteria asserts three failure-to-accommodate claims: (1) that his request to be placed in a cell on the first floor or in a cell that had elevator access was denied, thereby preventing him from participating in activities, programs, and services, such as going to health services for treatment, using the law library, getting haircuts, or attending recommended

4

programming due to his inability to traverse stairs safely (Filing No. 8, pp. 2, 3); (2) that his request for a cell equipped with a handrail next to the toilet was denied, thereby forcing him to use the toilet in an unsafe and unsanitary manner (Filing No. 8, p. 2); and (3) that his request for a handicap-accessible shower equipped with handrails and shower seat was denied, thereby forcing him to shower using an unsafe walker, and causing him to suffer injuries when he fell on two separate occasions (Filing No. 8, pp. 2-3).

With respect to his current confinement at OCC, Renteria alleges that even though he is not on any sort of sports restriction, recreation staff told him he could not participate in softball games with other inmates, or even be on the field, because of his disability. Renteria further alleges that he explained this to the warden, but is still not allowed to play softball. (Filing No. 8, p. 3.) Renteria does not allege that he requires any accommodation in order to have meaningful access to this recreational activity, so, as pled, this is a disparate treatment claim.

For relief, Renteria states he is seeking to recover $1 million in damages from NDCS. (Filing No. 8, p. 4.) No injunctive relief is requested.[3]

Although Federal Rule of Civil Procedure 8(a)(3) requires that a pleading contain "a demand for judgment for the relief the pleader seeks," the prayer for relief is not considered part of the claim for purposes of testing the sufficiency of the pleading under Rule 8(a)(2). *Schwan v. CNH Am. LLC*, No. 4:04CV3384, 2006 WL 1215395, at *35 (D. Neb. May 4, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255, at 508-09 (3d ed. 2004)); *see Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011); *Aurora Co-op Elevator Co. v. Aventine Renewable Energy-Aurora W., LLC*, No. 4:12CV230, 2014 WL 5610588, at *2 (D. Neb. Nov. 4, 2014). Renteria should

---

[3] Because Renteria is no longer confined at NSP, he cannot obtain injunctive relief regarding the location of his cell or the lack of handicap-accessible toilet and shower facilities. "[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). With proper proof, he may be entitled to prospective injunction relief regarding softball activities at OCC.

be aware, however, that punitive damages[4] are not recoverable under Title II of the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). In other words, Renteria is limited to seeking an award of compensatory damages.[5]

To recover compensatory damages, Renteria must prove discriminatory intent, which can be shown by deliberate indifference to his rights under the ADA—specifically, NDCS's "deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *See Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011). Renteria alleges NDCS deliberately refused to accommodate his needs and was deliberately indifferent to his health and safety. This is sufficient for pleading purposes, at least at this stage of the case.[6]

An additional limitation is imposed by the Prison Litigation Reform Act ("PLRA"), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Eighth Circuit "read[s] section 1997e(e) as limiting recovery for

---

[4] Punitive damages "are aimed not at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008).

[5] "Compensatory damages, also called actual damages, are 'an amount awarded to a complainant for the purpose of compensating that person for a proven injury or loss.'" *Varboncoeur v. State Farm Fire & Cas. Co.*, 356 F. Supp. 2d 935, 944 (S.D. Iowa 2005) (quoting Black's Law Dictionary (8th ed. 2004)).

[6] Renteria alleges his requests for accommodations were denied by "prison staff" or "prison officials." The Supreme Court has declined to decide whether a public entity subject to Title II of the ADA "can be held vicariously liable for money damages for the purposeful or deliberately indifferent conduct of its employees." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1773-74 (2015). The Eighth Circuit also has not addressed this issue. Because this is an open question, the court will assume for purposes of initial review that NDCS may be held liable based on the facts alleged in the Amended Complaint. *See, e.g. Cotton v. Douglas Cty., Nebraska*, No. 4:18CV3138, 2018 WL 6067513, at *7 (D. Neb. Nov. 19, 2018) (allowing ADA claim to proceed to service of process where prisoner alleged county was responsible for corrections officers' refusal to provide him with a wheelchair).

mental or emotional injury in all federal actions brought by prisoners." *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). While Renteria alleges he "fell and hurt himself" in the shower on two separate occasions, his other claims do not appear to involve any physical injury.

But even if Renteria suffered no physical injury, nominal damages[7] might still be available. *See Cassidy v. Indiana Dep't of Correction*, 59 F. Supp. 2d 787, 793-94 (S.D. Ind. 1999) (nominal damages are available for intentional violations of the ADA, even if no other damages are available), *aff'd sub nom. Cassidy v. Indiana Dep't of Corr.*, 199 F.3d 374, 376 (7th Cir. 2000); *see also McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018) ("[T]o recover more than nominal damages under [§ 1997e(e)], a prisoner must allege or prove more than mental or emotional injury.").[8]

The PLRA also provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Renteria's Amended Complaint does not indicate whether he has complied with this requirement. The Supreme Court has ruled, however, that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

---

[7] "One dollar ($1.00) arguably is the required amount in [ADA] cases where nominal damages are appropriate. Nominal damages are appropriate when the jury is unable to place a monetary value of the harm that the plaintiff suffered from the violation of his rights." Model Civ. Jury Instr. 8th Cir. 9.71 (2019), Notes on Use. *See Wheeler v. Tinsman*, No. 2:11-CV-02002, 2014 WL 1053738, at *3 (W.D. Ark. Mar. 18, 2014) (because alleged ADA violation did not involve physical injury, the most prisoner could recover if he prevailed on his claim was $1 in nominal damages and taxable costs of $350 for district court filing fee).

[8] The Eighth Circuit interprets the PLRA to require more than a *de minimis* physical injury. *McAdoo*, 899 F.3d at 525 (citing *Smith v. Moody*, 175 F.3d 1025, 1025 (8th Cir. 1999) (unpublished per curiam)). The Eighth Circuit has also stated that section 1997e(e) "'is merely a limitation on damages,' not an element of the … lawsuit." *Kahle v. Leonard*, 563 F.3d 736, 742 (8th Cir. 2009) (quoting *Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir. 2006)).

7

### III. CONCLUSION

The court has made a preliminary determination that Renteria's Amended Complaint contains sufficient factual allegations to state claims upon which relief may be granted under Title II of the ADA, [9] such that the case should proceed to service of process. [10]

Accordingly,

IT IS ORDERED:

1. The clerk of the court is directed to correct the docket sheet to change the name of Defendant from "Nebraska Department of Corrections" to "Nebraska Department of Correctional Services."

2. For service of process of process on the Nebraska Department of Correctional Services, the clerk of the court is directed to complete a summons form and USM-285 form using the following address:

> Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509

---

[9] The court cautions Renteria that this determination is based solely on the allegations in the Amended Complaint. The court has not made a determination on the merits of his claims or potential defenses thereto, nor is Defendant precluded from filing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[10] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915).

3.  The clerk of the court shall forward the summons form and USM-285 form together with a cop of the Amended Complaint (Filing No. 8) and a copy of this Memorandum and Order to the Marshals Service.

4.  The Marshals Service shall serve the Nebraska Department of Correctional Services at the above-listed address by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency).[11]

5.  The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

6.  Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7.  The clerk of the court is directed to set the following pro se case management deadline: "September 21, 2020: check for service."

Dated this 22nd day of June, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

---

[11] *See* Fed. R. Civ. P. 4(j)(2) ("A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.").